UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                                                                  CASE NO: 2:16-cr-71-FtM-UAMRM

JOSE CARLOS VARGAS-COLON

## ORDER

This matter comes before the Court on Defendant, Jose Carlos Vargas-Colon's Motion to Suppress (Doc. #20) filed on November 17, 2016. The Government filed a Response in Opposition (Doc. #27) on December 14, 2016. The Court held a hearing on January 10, 2017. Vargas-Colon was present and represented by Assistant Federal Public Defender James Lappan. The Government was represented by Assistant United States Attorney Robert P. Barclift. Defense Counsel called one witness, Task Force Agent Victor Chica. The parties stipulated to the introduction of Government's Exhibits 1 – 26 and Defense Exhibit 1. After hearing, the Court finds Defendant lacks standing to proceed.

## BACKGROUND

On September 20, 2015 a package ("Package") was mailed from Migdalia Rivera Ortiz, Calle Tiogreso #31, Ponce Puerto Rico 00731 to Erika Rivera at 2721 NW 7th Terrace, Cape Coral, FL 33993 ("Home"). Ten days later, postal employees at the San Juan, Puerto Rico post office facility observed the Package as it traveled through the mail.

Thereafter, in Fort Myers, US Postal Inspector Mark Cavic took possession of the Package. On October 1, 2015 a Lee County Sheriff's Office drug dog alerted to the presence of a controlled substance in the Package and as a result, on October 2, 2015,

Cavic submitted an affidavit in support of a warrant to search the Package. The warrant was issued by United States Magistrate Judge Carol Mirando. Upon the execution of the warrant, Cavic located a cellophane wrap containing 1,014.5 net grams of cocaine, 100 white Oxycodone pills, and miscellaneous baby gear.

After locating the drugs, Drug Enforcement Administration ("DEA") Task Force Officer and Cape Coral Police Department Detective Victor Chica submitted an affidavit in support of an anticipatory search warrant for the Home where the package was to be delivered. Lee County Judge Tara Paluck issued the search warrant stating that "[a]fter successful placement of the electronic tracking device and tamper sensor, a controlled delivery of the box [to the Home] may be attempted." (Doc. #28-1 at 1). She continued that "in the event that the package is delivered to and received by any individuals associated with the residence, the Cape Coral Police Department may enter the [Home] and conduct a search of the [Home] . . . . " (Doc. #28-1 at 1-2). The Package was then outfitted with an electronic monitoring system ("EMS") that allowed the police to know when the package was opened or moved.

Thereafter, and on the same day, DEA personnel set up surveillance of the Home. Around 5:00pm, Cavic delivered the Package to a young boy who answered the door at the Home. A short time later, officers witnessed a Hispanic woman, the young boy who received the package, and a second child exit the Home and walk down the street. The officers did not observe them carrying the Package, nor were they alerted to any movements by the EMS.

Shortly after 5:30pm, a man identified as Eldel Viera entered the Home. The EMS signaled that the Package had been opened. In response, the SWAT team approached

2

the Home. Viera and Vargas-Colon attempted to escape through a rear sliding door but retreated upon observing the approaching SWAT team.  SWAT entered the Home and arrested Viera near the master bedroom and Vargos-Colon barricaded inside a guest bedroom.  Ion swabs of Vargas-Colon's hands tested positive for Cocaine.

The following items were recovered from the Home:

1. The opened and emptied Package.
2. The cocaine from the Package hidden between a mattress and box spring in the master bedroom.
3. The oxycodone pills from the Package, which had been placed into another bag and taken into the kitchen.
4. A digital scale.
5. Four (4) cell phones and a tablet.

On October 16, 2015, pursuant to an affidavit submitted by Cape Coral Police Department Narcotics Detective Kenneth Cody, Lee County Judge Maria E. Gonzalez issued a search warrant for the cell phones and tablets.  Data from one of the cell phones revealed text messages regarding the Package, concerns about a tinted-windowed vehicle outside of the Home, as well as a number of self-portrait photographs of Vargas-Colon.

## DISCUSSION

Defendant Vargas-Colon argues the evidence at issue should be suppressed because the unwarranted installation of the EMS into the package was unlawful, and as a result, the search of the Home was unlawful as well.  Vargas-Colon also concludes the search of the cell phones was unlawful, and that evidence gained therefrom should be

suppressed. The Government responds that Vargas-Colon lacks standing to contest the inclusion of the EMS into the Package, the search of the Home, and the search of the cell phone. The Court agrees.

"[C]apacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). Thus, a standing inquiry properly relates to whether an individual possesses a legitimate expectation of privacy in the thing searched. *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000). To that end, once defendant's standing is questioned, "[t]he proponent of a motion to suppress evidence has the burden of proving facts that demonstrate the reasonableness of his expectation of privacy in the searched area." *United States v. Miravalles*, 280 F. 3d 1328, 1333 (11th Cir. 2002); *see also Rakas*, 439 U.S. at 130 n. 1. If defendant fails to establish standing, he may not challenge the police conduct. *United States v. Lehder–Rivas*, 955 F.2d 1510, 1521 (11th Cir.), *cert. denied*, 506 U.S. 924, 113 (1992). From this standpoint, the Court should impose no greater burden than "proof by a preponderance of the evidence" that the Government's conduct was permissible under the Fourth Amendment. *Nix v. Williams*, 467 U.S. 431, 444 n. 5, (1984).

A person has a legitimate expectation of privacy if (1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable*." United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir.). Notably, however, while overnight guests in a house have the sort of expectation of privacy that the Fourth Amendment protects, *Minnesota v. Olson*, 495 U.S. 91, 98 (1990),

where a residence is used for a commercial drug-related purpose, and an individual lacking ownership or prior ties to the residence is only present to fulfill a business transaction, any search that would occur would not violate the fourth amendment. *See Minnesota v. Carter*, 525 U.S. 83, 91 (1998).

Prior to determining the legalities of the placement of the EMS device into the Package, the search of the Home and cell phones, the Court will first determine whether or not Vargas-Colon has standing. While Vargas-Colon does not claim to have standing by virtue of the fact that he was the owner or lessee of the Home, he argues that his claims are merited because he was an overnight guest at the time of the search.

Vargas-Colon contends, but does not explicitly claim, that he was an overnight guest in the home. He argues that this can be discerned in two ways. First, he argues that the content of the text messages from a cell phone confiscated during the search of the Home point to his presence at the Home on the day before, as well as, the day of the search. From there, he asks the Court to conclude that his presence was constant, and that he stayed in the Home overnight as a guest. Second, Vargas-Colon argues that his status as an overnight guest is evidenced by a photograph taken during the search depicting two pieces of luggage along a wall in the guest bedroom. (Def. Ex. 2).[1] These arguments are not persuasive.

Vargas-Colon's reliance on the recovered text messages asks the Court to make unsupported inferential leaps to find that he was an overnight guest. Notably, Vargas-Colon has failed to assert ownership of the cell phone.[2] That said, even assuming

---

[1] The photograph depicts two bags, placed side by side, each of them bearing a white travel tag attached to its top, similar to that which can be expected to be gained while traveling through an airport in the United States.

[2] Nonetheless, the Court finds by a preponderance of the evidence that Vargas-Colon owned the cell phone given the existence of the text messages and self-portrait photographs, and that it was linked to his Facebook account.

5

*arguendo* that the phone belongs to Vargas-Colon, absent further evidence, the text messages alone do not meaningfully indicate that he was an overnight guest at the time of the search. Even if the text messages accurately reflect that Vargas-Colon was present at the Home on the day before and the day of the search, there is nothing to indicate why that naked fact would lend itself to the conclusion that he was an overnight guest.

Likewise, Vargas-Colon's reliance on a single photograph of luggage taken during the search of the Home is unpersuasive. Vargas-Colon presents no evidence to verify that the bags were his, and that *he* was an overnight guest at the residence. Absent more from Vargas-Colon, the Court cannot find by a preponderance of the evidence that Vargas-Colon has standing to challenge the search in this case.

Accordingly, it is now

**ORDERED**:

Defendant's Motion to Suppress (Doc. #20) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this January 12, 2017.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record